MORGAN, J.,
Dissenting
The plaintiff was an employee of The Cleveland Cooperative Stove Company and was injured while in the course of his employment on October 9, 1933. An application for compensation was prepared by Dr. S. A. Young, the company doctor. The application is marked as signed on October 12fch by the plaintiff and stamped as received by the Industrial Commission on October 28th, 1933.
The description of the accident in the application is: “Bumped leg against a flask while pouring iron” and the “Nature of Injury”, as: “Abrasion right leg, just above ankle.”
The only award made by the Commission was one of three dollars to cover the medical bill. No other sum has ever been paid to the claimant for this injury. More than two years after the date of the injury the plaintiff asked the Industrial Commission to modify the previous award and on December 29, 1938, the claim was disallowed by the Commission. On a *286 rehearing the Commission adhered to its ruling on the ground “that proof fails to establish the claimant’s disability as a result of the injury herein.”
At the rehearing, the evidence ■of the plaintiff and at least three of his fellow employees was offered to show that the only injury sustained by the plaintiff on October 9th was a burn.
The plaintiff testified referring to the injury of October 9th:
“The molds busted and I burned my leg. The molds busted out and the iron run right on my leg; still you can see the mark.”
The offer of the evidence of another witness was:
“The mold bust out and it burned him on the leg. It was pretty good sized burn.”
The other witness confirmed this evidence. There was no evidence to the contrary.
All of the evidence as to how the Plaintiff sustained his injury on October 9th was excluded by the Referee and the trial court on the ground that after two years, the plaintiff would be limited to evidence as to a bump¡ With this evidence excluded there is no evidence in the record other than in the application for compensation as to what happened at the time -the plaintiff was injured on Oct. 9th.
On October 9th, following his injury, plaintiff was given a slip to go to see Dr. Young, the company doctor, who, on the same or the following day, bandaged plaintiff’s leg and the plaintiff went back to work. Later on or about October 22nd, the record shows that when a scab had formed on the injured leg, plaintiff bumped his leg on a flask and knocked off the scab. The plaintiff was again sent to Dr. Young who treated the leg with a salve and a bandage. No claim for compensation was filed for knocking off the scab on October 22nd.
In his opening statement at the trial, counsel for the Commission stated to the Court:
“There was a claim filed during the statutory time, but in the evidence here there has been an attempt made throughout the entire testimony of plaintiff’s witnesses, in fact by their medical testimony, to show a burning of this man’s leg two weeks prior to the time he bumped his leg against a flask and in various questions asked the medical witnesses and the witnesses called by plaintiff, they are attempting to show an injury before this one occurred.”
That statement of counsel for the Commission can have but one meaning, namely, that the injury referred to in the application for compensation was caused by the plaintiff bumping his leg against the flask which occurred on October 22nd and that the plaintiff was attempting by introducing evidence as to a burn “to show an injury before this one occurred.”
The above statement by defendant’s counsel is a misstatement, no doubt unintentional, of the record in this case. The bump occurred on October 21st or 22nd. The only claim filed was for an injury on October 9th and, as stated, the application for compensation shows on its face that it was signed on October 12th, more than a week before the plaintiff sustained the bump. The evidence offered by the plaintiff and excluded by the referee, and the trial court, was as to the injury sustained on October 9th for which an application for compensation had been filed and not for some- *287 injury sustained before the one specified in the application.
The record discloses that the court was misled by this statement and treated the case as if the claim for compensation had been filed for the bump sustained on October 22nd. Before any of the evidence in the case had been introduced the court, after reading the description of the injury in the application for compensation, said it was based on a ‘bump.’ The court added:
“Then it would seem to the court that any testimony with reference to the burn, prior to that time, would not be competent.”
That this confusion continued throughout the case and that the court and counsel for the commission entertained the view that the burn was sustained prior to the date of the injury, for which the plaintiff filed his application for compensation, is shown by a statement made by the court just before the termination of the trial. The court said:
“If he made no claim to those things at the time he filed his claim for compensation with the Commission, I know of no orderly process of law whereby he can bring a claim for a burn he received some time prior, a week or a month.”
As stated, the only application for compensation was filed for an injury sustained on October 9, 1933. There is no evidence in the record to show that the plaintiff sustained any burn or any other injury prior to that date. On the y, the evidence is overwhelming and undisputed, if the plaintiff had been permitted to introduce it, that the burn was sustained on October 9th and .was the only injury that the plaintiff sustained on that date.
The question of law in this case is this: Does the fact that the application for compensation describes the injury sustained on October 9th as ‘bumped leg against a flask while pouring iron’ prevent the plaintiff from showing just how he was injured on that date?
In Kaiser v Industrial Commission, 136 Oh St 440, the plaintiff filed an application for compensation for the freezing of his right foot. It was held that plaintiff was not barred by the two year statute, §1465-72a from claiming that at the same time his left foot was also frozen which later necessitated an amputation of the left leg above the knee. The court said in its opinion:
“Giving a liberal construction to all the statutory provisions, we are forced to the conclusion that when the application for compensation is filed, and the commission takes jurisdiction, that jurisdiction is to continue as to all injuries which grew out of the original accidental injury, whether fully specified in the original application or not, and that after jurisdiction attaches it is continuous as to all injuries and disabilities caused thereby for the full ten year prior prescribed by §1465-86 GO.”
The second syllabus is substantially to the same effect. This case has not been overruled but was distinguished in the case of Ferguson v Industrial Commission, 138 Oh St 529. The Ferguson case agreed that the ten year statute applies to “a subsequent disability, arising from the original accident.”
The present case differs from the Ferguson case in that it is not claimed that in addition to a bump the plaintiff also sustained a burn on October 9th. The plaintiff *288 claims that the only injury he received on that date was a burn and that the only bump he received was about two weeks later when the scab that had formed over the burn was knocked off.
The description of the injury in the application does not negative the possibility of a burn. That the plaintiff was dealing with high heats at the time is shown by the fact that he was' injured while ‘pouring iron.’ Any contact of any part of his body with a flask containing molten iron would probably have resulted in a burn.
It therefore follows that the plaintiff in this case comes within the ruling announced in the Kaiser case approved in the Ferguson case in claiming compensation for a “subsequent disability arising from the original accident.”
As stated, Dr. Young, the company doctor, prepared this application. The question naturally arises: How did it happen that Dr. Young on October 12, 1933, three days after the accident, made the mistake of describing plaintiff’s injury in the application as a bump and not as a burn? This is the probable explanation. The plaintiff testified with reference to the application for compensation, referring to Dr. Young:
“He didn’t write on that paper when I was with the burn. He just wrote on that paper when I came with the bump.”
This is confirmed by the filing date, October 28th, stamped on the application. With this clew it is not difficult to understand what happened in this case.
After sustaining the burn on October 9th, plaintiff continued to work. Some time after October 22nd, Dr. Young in order to get his fee of $3.00 prepared the application for compensation. He did not consider either the injury of October 9th or the bump of October 22nd to be serious. However, in preparing the application for compensation some time after October 22nd Dr. Young realized that the real injury sustained by the plaintiff was not knocking off the scab on October 22nd but was the injury that caused a scab to form. That injury was sustained by plaintiff on October 9th and to make perfectly clear that the application referred to that injury it was signed as of October 12th, although it was really prepared two or three days before October 28th when it was filed. A doctor for a large company specializing in the treatment of injuries caused by industrial accidents probably had many minor accidents such as burns and bumps to treat within the two weeks time that elapsed between October 9th and October 22nd. It may well have been that Dr. Young did not have clearly in his mind when he prepared the application just what was the nature of the seemingly minor injury that plaintiff had suffered on October 9th or it is quite possible that calling the injury a ‘bump’ may have been just carelessness on his part, partially explained by the fact that the plaintiff had last seen him for a ‘bump.’ The matter did not seem at the time to be of great importance because all that was seemingly involved was Dr. Young’s fee of $3.00, which, as stated, is all that has ever been paid in this case.
A reading of this record shows that the plaintiff is not an educated person and was hardly qualified to fill out the application himself, although there is nothing in the record to indicate that the plaintiff was not a straightforward and truthful witness.
Can it be possible that it is the law in Ohio that in a case like this, *289 the plaintiff is bound by the mistake or the carelessness of the company doctor in describing the injury in the application? Especially when there is no attempt by this evidence to set forth a separate, distinct injury, but only to correct an inaccurate description of the only injury sustained by the plaintiff on October 9th by stating the facts as to how the injury occurred?
The Supreme Court, although it has enforced a rather strict rule in interpreting §1465-72a GC, has nev.er gone so far as the Industrial Commission, and the trial court have gone- in this case.
This ruling of the trial court, in my opinion, is directly contrary to §1465-91 GC and to the principle set forth in Roma v Industrial Commission, 97 Oh St at page 252, as follows:
“The State of Ohio, by the very terms of the law becomes in fact the representative, if not the champion, of the claimant, to the extent of seeing that exact justice is done him and it is quite manifestly the intention of the law that the ordinary rules of procedure although wise and fair in the abstract must give away, if in adhering to them, any conclusion even savoring of injustice would result.”
The subsequent history of the case is as follows: The plaintiff testified that the treatment of Dr. Young was “to put the light on me and then he injected me in the' leg.” The result was, according to plaintiff, “that made me worser yet; the leg started to inflame and burning and so I quit him,” in the early part of December.
An official of the employer then gave the plaintiff a letter to a Dr. Webster who saw the plaintiff three times, after the first time at plaintiff’s expense. Dr. Webster advised the plaintiff to stay off his legs and not to go back to work. Following his first visit to Dr. Webster, the plaintiff did not go back to work for six or seven weeks. He then returned to work for a short time. His physical condition became such that he was obliged to quit work on April 25, 1934, and he has been unable to do any work of any kind from that date , to the present time.
Some of plaintiff’s friends recommended a Dr. Otterlein and plaintiff called at his office in February 1934. Plaintiff testified that at the time he went to see Dr. Otterlein, the leg “was worser instead of better * * * My leg started to get like a red beef.” Plaintiff paid Dr. Otterlein some money and he still owes him on account.
Plaintiff then consulted Dr. C. O. Hain. His first visit was on April 26, 1934. His visits to Dr. Hain were also at his own expense. Dr. Hain told plaintiff that the leg would not heal because “I had tonsils or some poison in my system.” Dr. Hain died in June, 1934, and from Dr. Hain’s records it was stipulated by the parties at the rehearing, “that Dr. Plain found that he had poisoning but not what kind; first thought it was teeth or tonsils.” Dr. Hain’s records by stipulation show that the doctor made three house calls and plaintiff visited the doctor’s office eleven times.
Plaintiff testified that Dr. Hain treated the leg with a salve and bandage and told the plaintiff' to keep off his leg. He also recommended that plaintiff go to Mt. Clemens, Michigan, for treatment, which he did in July, 1934, and there he remained three weeks where he was given massage and sulphur bath treatments.
When he returned to Cleveland, from Mt. Clemens plaintiff was referred to the Deaconess Hospital *290 which in turn referred him to Dr. Walter M. Bucher. Dr. Bucher continued to treat the plaintiff for a year and a half afterwards and came to the conclusion shortly after examining plaintiff that he was suffering from lead poisoning.
The plaintiff then went to see Dr. Arthur E. Robertson at Dr. Bucher’s suggestion. Dr. Robertson confirmed the finding of Dr. Bucher, that the plaintiff was suffering from lead poisoning. Both Dr. Bucher and Dr. Robertson testified as medical experts at the trial.
In May, 1936, the plaintiff went to City Hospital for treatment. He continued to go to City Hostpital three times a week for over a year. He was taken to and from the hospital in an ambulance. In the summer of 1936 he remained at City Hospital for thirteen weeks when he was given fever treatments. In June, 1938, he again returned to City Hospital where he remained for nine weeks. He is now being treated twice a week by a Physiotherapist. He cannot walk or stand on his legs and gets about in a wheel chair. He is helped in and out of bed and is dressed and undressed by his wife. He is almost helpless and it is a certainty that he will never be able to work again.
Dr. Bucher and Dr. Robertson testified at the hearing. Dr. Bucher first examined the plaintiff in August, 1934, and continued to treat him for over a year. Dr. Bucher diagnosed plaintiff’s case as one of Polyarthritis Polyneuritis and lead poisoning.
■ Dr. Bucher said that one afflicted with lead poisoning would be susceptible to arthritis and neuritis. When asked whether he could tell for how long a period plaintiff had lead poisoning his answer was ■‘no.’ He testified that the effect of lead poisoning on an injury such as plaintiff experienced on Octoher 9, 1933, would be to retard the healing process.’
Dr. Robertson examined plaintiff in November, 1935. His diagnosis was “chronic gouty arthritis due to lead poisoning.”
Dr. Robertson was then asked a hypothetical question ending with the sentence, “would you say that there is any causal connection or any causal relationship between the present condition of total disability and the injury which he had received on October 9, 1933?”
The defendant objected to the question on the ground that the hypothetical question contained facts not shown by the evidence, namely, that the plaintiff suffered a burn on October 9, 1933.
There followed a long colloquy between counsel and the trial judge, during which the court said that he would not permit the plaintiff to amend his petition and “that unless you eliminate all testimony except that relating to the bump on the ankle, the court is going to withdraw a juror and put the case over to the next term.” Following this statement by the court, counsel for both parties consented to waiving a jury and as shown by the transcript “the trial was to be resumed at a later date before Judge Baer.”
Dr. Robertson never answered the hypothetical question and the trial was never resumed. The trial judge, without any further hearing being had, over three months afterwards, found for the defendant.
On this record, the defendant maintains in addition to the claim that all evidence as to the burn of October 9th was rightfully excluded that there was “no evidence of any disease existing at the time of plaintiff’s injury,” and that there was no medical evidence that plaintiff’s disability was due to an *291 injury received in the course of his employment.
There is positive evidence in the record that the injury which the plaintiff received to his leg on Oct. 9,1933, did not heal for at least a year and a half and that during that period he was treated for his injured leg by physicians at plaintiff’s expense. The miserable pittance of $3.00 paid on his claim for compensation all of which went to Dr. Young is clearly not adequate compensation for his injury, even if all evidence as to lead poisoning is excluded.
It is clear that no award can be made the plaintiff in this case for an occupational disease. In the course of the trial the counsel for the Commission stated that the plaintiff had previously filed an occupational disease claim which had been rejected by .the Commission because “it was not filed within four months after he discovered he had lead poisoning.” We have no right to criticize and I do not criticize the action of the Commission in denying the plaintiff compensation for an occupational disease as we do not have before us the record on such application and we have in the bill of exceptions only a part of plaintiff’s evidence taken on the rehearing and none of the defendants. The referee, however, attached to his report and opinion in the case a memorandum in which he recommended that the commission reopen the matter,- the plaintiff’s application for compensation, on the basis of .suffering from an occupational disease.
Although there can be no recovery for an occupational disease, in this case, it does not follow that the evidence as to lead poisoning has no place in the case. Dr. Bucher testified that the effect of lead poisoning would be to retard plaintiff’s recovery from his leg injury. Whether Dr. Robertson so testified we do not know, as the trial court on the failure of plaintiff to withdraw all his proffered evidence as to a burn, terminated the trial when only a part of Dr. Robertson’s evidence had been offered.
Defendant also maintains that there is no ‘positive evidence in the record that the plaintiff was afflicted with lead poisoning on October 9, 1933.’ Dr. Bucher naturally was unable to testify how long plaintiff had had lead poisoning. Dr. Bucher testified that he made the diagnosis of lead poisoning shortly after he examined plaintiff. He testified “lead poisoning came very soon because I had him get the ingredients that they used out in the foundry and we had those analyzed to see whether or not there was any lead in them and there was.”
Dr. Bucher thus clearly indicated that in his opinion the plaintiff had become infected with lead poisoning by his work at the foundry of the Cleveland Cooperative Stove Company. When it is recalled that plaintiff worked for the same employer for over twelve years before Oct. 9, 1933, and that he only worked for short periods thereafter and that he worked his last day on April 25, 1934, it is extremely unlikely that he escaped lead poisoning for twelve years only to become infected in the short time he was employed after his injury.
The plaintiff testified that the wound from the beginning did not heal, but on the contrary, it “became red like beef” and “got worser” and this fact, coupled with Dr. Bucher’s testimony that lead poisoning would retard plaintiff’s recovery from the injury, makes it a reasonable inference that the cause of the failure of the wound to heal was lead poisoning.
At the hearing in this court, defendant’s counsel made a claim *292 which was not even mentioned in defendant’s brief. Counsel claimed that this court cannot consider any of the errors assigned by plaintiff because the bill of exceptions is incomplete as the trial judge may have considered all of the evidence introduced at the hearing, whereas only a part of plaintiff’s evidence was heard at the trial and is to be found in the .bill of exceptions.
The entry shown by the transcript made three months after the trial on June 11, 1941,'is as follows:
“The parties by their attorneys ■came, waived a jury and submitted this case to the court on the pleadings and evidence. In consideration whereof the court finds that plaintiff is not entitled to participate in the Workmen’s ■Compensation of Ohio.”
While the entry is silent as to just what evidence was before the court, the fair inference is that the evidence referred to in the entry was the evidence introduced at the trial in February inasmuch as the trial was never “resumed at a later date” as the parties had agreed.
In view of the fact that the trial judge did not certify that the bill of exceptions contains all of the evidence, this court has no power to reverse on the weight of the evidence. However, no objections to the bill of exceptions were filed by the defendant and the court’s certificate states that ‘upon due consideration of the same the objections and amendments thereto, this* said bill of exceptions is hereby allowed and signed by the court.’ Therefore, whatever doubt there may be as to whether the trial court considered other evidence, it is quite clear that all of the trial appearing in the bill of exceptions is a part of the record before us and that all of the assigned errors appearing therein including the exclusion of all evidence as to the nature of the injury sustained by plaintiff on Oct. 9, 1933, are properly before us for review.
It is obvious to me that plaintiff has not been adequately compensated for the injury to his leg on Oct. 9, 1933, for which he filed his application for compensation. The plaintiff testified that prior to the injury of Oct. 9th he was in good health and he also offered medical evidence going to show that his leg wound aggravated and contributed to his present helpless condition. The objections to the hypothetical questions asked Dr. Bucher and Dr. Robertson on this point were sustained by the court because they contained facts of which there were no evidence, principally that the plaintiff had sustained a burn on Oct. 9, 1933. If, as I believe, the court erred in excluding the evidence offered by plaintiff as to a burn, it also erred in sustaining objections to the hypothetical questions asked Dr. Bucher and Dr. Robertson.
That the court in this case cannot award the plaintiff full compensation for his present helpless condition is a reason for and not against making such an award as the case warrants.
For the errors stated above and in view of the fact that the record clearly discloses that the plaintiff has not been paid adequate compensation for the injury for which he filed his application for compensation, it is my opinion that this case should be reversed.